UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:04-CR-146 |
| ) | (PHILLIPS/GUYTON) |
| MAURICE BLACK, ) | |
| ) | |
| Defendant. ) | |

## **REPORT AND RECOMMENDATION**

This case is before the Court on the defendant's Second Motion to Suppress Evidence [Doc. 38]. This Motion was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on September 1, 2005. Assistant United States Attorney Steve Cook was present representing the government. Assistant Federal Community Defenders Paula Voss and Kim Tollison were present representing the defendant, Maurice Black. The defendant was also present.

The defendant has been indicted [Doc. 35] in two counts alleging (1) that he is a felon and possessed a Jennings Bryco Arms .380 caliber semiautomatic pistol on September 16, 2004, and (2) that the firearm in his possession on September 16, 2004, was stolen and had been shipped in interstate commerce. Black has moved to suppress [Doc. 38] any and all evidence and information obtained by agents of the government during the agents' interview of Black on September 17, 2004, alleging that:

1

> (1) The agents did not give him the <u>Miranda</u> warnings before questioning him in violation of the Fifth Amendment, and
>
> (2) His responses to the agents' questions were not voluntarily given.[1]

The government did not file a written response to the motion but took the position at the hearing that the agents did give Black the <u>Miranda</u> warnings and that Black stated he understood them and voluntarily answered the agents' questions. Therefore, the government contends that Black's rights were not violated.

### I. FACTS

The government's first witness was James Clayton Claiborne ("Claiborne"). Claiborne testified that he is an officer with the Knoxville Police Department ("KPD"). He testified that he has been with the KPD for twenty-six years. He said that for the last ten years he has been assigned to a task force for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). He testified that he has been sworn by the U.S. Marshals as a federal agent in this role. Claiborne testified that his principal duty is to review KPD gun cases to see if the persons arrested are convicted felons in order to determine whether a federal violation has occurred. Claiborne said he also participated in developing cases for federal prosecution.

Claiborne testified that on September 17, 2004, he accompanied Frederic Winston ("Winston"), an ATF agent, to interview Black at the Knox County detention facility. Claiborne

---

[1] The Court notes that on April 25, 2005, the defendant sought to orally amend his suppression motion to include a Sixth Amendment right to counsel claim. This claim was not pursued in any subsequent briefing or at the September 1 suppression hearing. Accordingly, the Court considers it to be waived. Moreover, even if considered on the merits, the Court finds no violation of the Sixth Amendment right to counsel in the record before it.

testified that he, Winston, and Black met in a small break room normally used by officers at the detention facility. He stated that he was casually dressed and not armed. He further testified that just the three of them were present during the interview.

Claiborne testified that he and Winston identified themselves and said that they were there to discuss the gun, which was found with Black when he was arrested the night before. Claiborne said that Winston advised Black of his Miranda rights by reading from a card and that Winston did recite all of the Miranda warnings to Black. According to Claiborne, Black then said, "I understand my rights." The defendant then went on to say that he was willing to talk to the agents. Claiborne testified that Black was presented with a written form Waiver of Rights to sign and that Black said that he would not sign anything but that he would talk to the agents.

Claiborne testified that he and Winston then discussed the gun and its ownership with Black. Black told them that the gun belonged to someone else, who had left it in the vehicle in which Black was riding. Black was then asked, "Why were your fingerprints on the gun?" According to Claiborne, in response to this question, Black stated that he had handled the gun about a week earlier. However, Black stated that the gun did not belong to him. He said that the gun came from Atlanta and belonged to a young black male named "G."

Claiborne testified that the interview lasted ten to fifteen minutes at the most. He further testified that Black did not ask for a lawyer at any time, nor did Black ever ask that the interview be stopped. Claiborne testified that no threats or promises were made to Black and that Black was not impaired in any way. Claiborne described Black's demeanor during the interview as calm.

On cross-examination, Claiborne testified that he knew that Black was under arrest and that a warrant had been issued for him at the time of the interview. Claiborne testified that the

3

Case 3:04-cr-00146   Document 49   Filed 09/12/05   Page 3 of 10   PageID #: 37

interview was conducted in the early afternoon, or possibly late morning but that, in any event, the interview took place within a few hours of the defendant's arrest. Claiborne testified that he did not ask the defendant if he had an attorney. He stated that he presented Black with his identification card and that Winston did the same. Claiborne testified that the conversation with Black was not tape-recorded. He said that Winston took notes but that he did not. He testified that he reviewed Winston's notes prior to testifying at the hearing. Claiborne also testified that Black's fingerprints were not on the gun and that, in fact, there probably had not been a fingerprint analysis of the gun done at the time of the interview. Claiborne further confirmed that Winston did not note on the Waiver of Rights form that Black refused to sign the waiver. Claiborne testified that such a notation on the waiver form sometimes is made by officers and that sometimes it is not.

On redirect examination, Claiborne testified that suspects often agree to talk to officers but refuse to sign the Waiver of Rights form. At the conclusion of Claiborne's testimony, the government rested.

The defendant called Agent Frederic Winston as his first witness. Winston testified that he has four years of experience with the ATF. Winston testified that he went to the Knox County detention facility to interview Black, because he had received a call from Todd Gilreath, the FBI task force liaison, advising that the defendant, a convicted felon, had been arrested in the possession of a firearm. Winston testified that the purpose of the interview was to inquire about the gun to learn such matters as where the defendant got the gun. The purpose of getting this information was to prosecute Black and possibly other persons.

Winston testified that at the outset of the interview, he identified himself and presented his identification to Black, although he did not leave one of his cards with Black. Winston testified that he was dressed casually. Winston testified that he did advise Black of his Miranda

4

rights by reading the Miranda rights card, which he kept on his person. Winston authenticated his rough notes of the interview. Winston's's rough notes of the interview indicate that Black said that the gun did not belong to him, nor did the car in which he was arrested. Black advised Winston that the gun belonged to someone named "G." Furthermore, Black testified that "G" probably left the gun in the car.

Winston testified that Black agreed to talk with the agents but refused to sign the written Waiver of Rights form. He said that as he pulled the form out, the defendant said that he knew his rights but that he was not signing anything. Winston testified that he read from his Miranda rights card, but he did not show the card to Black. He stated that if he had already prepared the Waiver of Rights form, then he would typically note on it that a subject refused to sign. He said that it was not unusual for him to make no notation of a refusal to sign.

Winston agreed that his notes also reflect that Black stated, "My prints will be on there." Winston testified that Black did not ask for an attorney during the interview, and Winston did not ask him if he had an attorney. Winston testified that there was no tape recording made of the interview and that he did not make any notation on the Miranda Waiver of Rights form indicating that Black had refused to sign it.

On cross-examination, Winston testified that he had the same Miranda warnings card with him at the hearing as he did when he interviewed Black. He read the card into the record. Winston testified that upon being read his rights, the defendant said, "I know my rights." According to Winston, Black then agreed to talk with Winston and Claiborne.

Winston then reviewed and authenticated the ATF report of the investigation on this case, dated October 3, 2004. The report says that the Miranda warnings were given and that the

5

defendant agreed to talk but would not sign the written Waiver of Rights. Said report was admitted into evidence as Exhibit 1.

On redirect examination, Winston testified that he started his preparation of Exhibit 1 earlier than the date thereon. Winston then testified that the initial conversation at the interview could have started rather casually with a statement like, "I guess you know why we're here." Winston also testified that he could have said to Black that Black could "help himself," meaning that Black's cooperation could help him before the Court because Winston would tell the prosecutor of the defendant's cooperation. Winston's rough notes taken during the interview were admitted into evidence as Exhibit 2.

The next witness called by the defense was the defendant Maurice Black. Black testified that he was interviewed on September 17, 2004, by Winston and Claiborne. Black testified that neither Winston nor Claiborne read him his <u>Miranda</u> rights prior to or during the interview.

On cross-examination, Black testified that he has several prior felony convictions, including a 1984 conviction for possession and distribution of drugs, a 1984 conviction for armed robbery, a 1990 conviction for drugs, a 1991 conviction for burglary, and a 1996 conviction for burglary and for carrying a concealed weapon. Black testified that Winston and Claiborne either are mistaken or are lying about providing him with his <u>Miranda</u> warnings. Black further testified that he does not know Winston or Claiborne and does not know of any reason why they would fabricate testimony against him. The defendant stated that he understands that he is a "career criminal" and that he is facing a potential range of penalty in the present case of fifteen years to life.

## II. ANALYSIS

The defendant contends that any statements he made during the meeting with Claiborne and Winston on September 17, 2004, must be suppressed, because they were made while he was in custody but without any advice of the Miranda warnings. The defendant also maintains that his statement was not voluntarily given. The government responds that the Miranda warnings were given and that the defendant orally waived his rights and voluntarily agreed to speak with Claiborne and Winston.

The Fifth Amendment protects against a defendant being "compelled in any criminal case to be a witness against himself." In light of this protection, the Supreme Court has held that law enforcement officers cannot interrogate a suspect who is in custody until they advise the suspect of his or her rights under the Fifth Amendment. Miranda v. Arizona, 384 U.S. 436, 478-79 (1966); see also United States v. Salvo, 133 F.3d 943, 948 (6th Cir. 1998). "Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial." Stansbury v. California, 511 U.S. 318, 322 (1994); Salvo, 133 F.3d at 948.

Additionally, even when the Miranda warnings are administered, the government must prove that the defendant voluntarily, knowingly, and intelligently waived those Miranda rights before it may introduce an incriminating statement by a defendant. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986). The government bears the burden of proving the voluntariness of the waiver by the preponderance of the evidence. Id. at 168.

### A. Presence of Miranda Warnings

The defendant first contends that he was not given the Miranda warnings when he was interrogated by the officers while he was in custody. At the suppression hearing, he argued that

7

there is no record that the officers gave him the warnings in Agent Winston's rough notes made at the time of the interview. He noted that it is typical practice for the officers to note that a defendant has refused to sign a rights waiver form on the form itself and then to retain that unexecuted form in the file. He maintains that his testimony that he did not receive the warnings in combination with the absence of any indication that the warnings were given in Winston's notes or on an unexecuted rights waiver form establishes that Winston did not read the <u>Miranda</u> warnings to him.

    In the present case, Claiborne and Winston both testified that Winston read the <u>Miranda</u> rights to the defendant from a card before questioning the defendant about the gun. Both stated that the defendant said he understood his rights and was willing to talk with them, but he did not want to sign a Waiver of Rights form. Winston said that he did not note a refusal to sign on a waiver form if he had not filled out the form. He said that Black declined to sign the form as he was pulling it out. Finally, Winston testified that he did memorialize his reading of the <u>Miranda</u> rights and Black's refusal to sign the waiver in his ATF report.

    The Court finds that the testimony of Claiborne and Winston is credible and unimpeached. The Court finds that the testimony of Black is not credible. Accordingly, the Court finds that Claiborne and Winston did give Black his <u>Miranda</u> warnings before the interview in question and that the defendant agreed to talk with the agents after being warned of his rights.

### B. Voluntariness of Statements

    In his brief, the defendant also states that the statements he made during his September 17, 2004 interview by Claiborne and Winston were not voluntarily given. The main thrust of his argument appears to be that his statements were not voluntary because he was not given the <u>Miranda</u> warnings and did not waive them. The Court has already rejected this contention

8

above. The Court will briefly examine the totality of the circumstances surrounding the September 17 interview to determine the voluntariness of the defendant's statements despite his receipt of his Miranda rights.

As noted above, the government must prove by a preponderance of the evidence that the defendant knowingly, voluntarily, and intelligently waived his Miranda rights in order to use the defendant's statement at trial. Connelly, 479 U.S. at 169-70. To determine whether a confession was voluntary, the court must examine the following factors in light of totality of the circumstances: (1) whether the police conduct was objectively coercive, (2) whether the coercive police conduct was sufficient to overbear the defendant's will when viewed subjectively from the defendant's state of mind, and (3) whether the coercive police conduct was in fact the cause of the defendant's will being overborne. McCall v. Dutton, 863 F.2d 454, 459 (6th Cir. 1988). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Id. at 167. "If the police misconduct at issue was not the 'crucial motivating factor' behind petitioner's decision to confess, the confession may not be suppressed." McCall, 863 F.2d at 459 (citing Connelly, 479 U.S. at 163-64).

In the present case, the defendant does not allege any coercive police conduct. Although the interview took place at the Knox County detention facility, it was conducted in the break room. Only two officers were involved, they were both dressed casually, and no guns were drawn. Agent Winston acknowledged that he may have spoken casually to the defendant, and there is no allegation of raised voices. The Court finds that Black did state that he knew his rights, and that he voluntarily agreed to discuss the facts and circumstances of this case with Claiborne and Winston. Although the defendant refused to sign a Waiver of Rights form, this does not render his waiver involuntary. A waiver of Miranda rights does not have to be in writing in order to establish

9

that the waiver was knowing and voluntary. United States v. Miggins, 302 F.3d 384, 397 (6th Cir.), cert. denied, 537 U.S. 1097 (2002). The Court finds that there is no evidence of coercive police conduct and that the defendant's statements were voluntarily given. Therefore, the Court finds no reason to suppress any statements made by Black to Claiborne and Winston during the interview in question.

### III. CONCLUSION

After carefully considering the evidence introduced during the course of the evidentiary hearing and after reviewing the relevant legal authorities, it is clear that there is no basis to suppress the defendant's statements made in his interview with Claiborne and Winston on September 17, 2004, because he was given the Miranda warnings. Moreover, the Court finds that the defendant made the statements voluntarily. For the reasons set forth herein, it is **RECOMMENDED** that defendant's Second Motion to Suppress Evidence [Doc. 38] be **DENIED**.[2]

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).